UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ELENA PEREZ GARCIA,

    Plaintiff,

        v.                                      No. 3:18-cv-00986 (WIG)

NANCY A. BERRYHILL,
Acting Commissioner of
Social Security,

    Defendant.
_____X

## RULING ON PENDING MOTIONS

This is an administrative appeal following the denial of Plaintiff, Elena Perez Garcia's, application for Title XVI supplemental security income benefits ("SSI"). It is brought pursuant to 42 U.S.C. § 405(g).[1] Plaintiff now moves for an order reversing the decision of the Commissioner of the Social Security Administration (the "Commissioner"), or in the alternative, an order remanding her case for a rehearing. [Doc. # 18]. The Commissioner, in turn, has

---

[1] Under the Social Security Act, the "Commissioner of Social Security is directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under [the Act]." 42 U.S.C. §§ 405(b)(1) and 1383(c)(1)(A). The Commissioner's authority to make such findings and decisions is delegated to administrative law judges ("ALJs"). *See* 20 C.F.R. § 404.929. Claimants can in turn appeal an ALJ's decision to the Social Security Appeals Council. *See* 20 C.F.R. § 404.967. If the appeals council declines review or affirms the ALJ opinion, the claimant may appeal to the United States district court. Section 205(g) of the Social Security Act provides that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C § 405(g).

moved for an order affirming her decision. [Doc. # 19]. For the reasons set forth below, Plaintiff's motion is granted and the Commissioner's motion is denied.

## BACKGROUND

**1. Facts**

Plaintiff filed her SSI application on November 20, 2014. Her claim was denied at both the initial and reconsideration levels. Plaintiff then requested a hearing. On December 22, 2016, a hearing was held before Administrative Law Judge Ellen Parker Bush (the "ALJ"). Plaintiff, who was represented by counsel, and a vocational expert ("VE") testified at the hearing. On May 30, 2017, the ALJ issued a decision denying Plaintiff's claim. Plaintiff timely requested review of the ALJ's decision by the Appeals Council. On May 30, 2018, the Appeals Council denied review, making the ALJ's decision the final determination of the Commissioner. This action followed.

Plaintiff has alleged disability based primarily on the conditions of diabetic neuropathy and degenerative disc disease. She was forty-six years old on the date of the hearing. She has an associate degree and past work experience as an accounting assistant. Plaintiff's complete medical history is set forth in the Joint Stipulation of Facts filed by the parties. [Doc. ## 18-1, 19-2]. The Court adopts this stipulation and incorporates it by reference herein.

**2. The ALJ's Decision**

The Commissioner must follow a sequential evaluation process for assessing disability claims. The five steps of this process are as follows: (1) the Commissioner considers whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities; (3) if the claimant has a "severe impairment," the

Commissioner must ask whether, based solely on the medical evidence, the claimant has an impairment which "meets or equals" an impairment listed in Appendix 1 of the regulations (the Listings). If so, and it meets the durational requirements, the Commissioner will consider the claimant disabled, without considering vocational factors such as age, education, and work experience; (4) if not, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has the residual functional capacity to perform his or her past work; and (5) if the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work in the national economy which the claimant can perform. 20 C.F.R. § 416.920(a)(4)(i)-(v). The claimant bears the burden of proof on the first four steps, while the Commissioner bears the burden of proof on the final step. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014).

In this case, at Step One, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the SSI application date. (R. 23). At Step Two, the ALJ found the following severe impairments: diabetes; peripheral neuropathy; left-sided carpal tunnel syndrome, status post right-sided carpal tunnel release; and degenerative disc disease of the lumbar spine. (*Id.*). At this second step, the ALJ also discussed Plaintiff's obesity, and concluded that there is no evidence it impacted her ability to perform basic work activities. (R. 23-24). At Step Three, the ALJ found Plaintiff's severe impairments, alone or in combination, do not meet or medically equal the severity of one of the listed impairments. (R. 24). Next, the ALJ determined Plaintiff retains the following residual functional capacity[2]:

> Plaintiff can perform light work with the following limitations: she can occasionally climb ramps, stairs, ladders, ropes, and scaffolds. She can

---

[2] Residual functional capacity ("RFC") is the most a claimant can do in a work setting despite his or her limitations. 20 C.F.R. § 416.945(a)(1).

3

occasionally stoop, crouch, and crawl. She can frequently balance and crouch.[3]
She should avoid concentrated exposure to respiratory irritants and hazards.

(R. 25).

In formulating this RFC, the ALJ considered three medical opinions. First, Dr. Colb, a State Agency Medical Consultant, reviewed the record and provided an opinion dated November 20, 2015. He opined that Plaintiff could occasionally lift and carry twenty pounds and frequently lift and carry ten pounds, and could sit, stand, and walk for six hours in an eight-hour workday. (R. 96). He found Plaintiff had limited ability to push and pull with the left upper extremity. (*Id.*). Dr. Colb stated Plaintiff could occasionally climb ramps, stairs, ladders, ropes, and scaffolds; occasionally stoop, crouch, and crawl; and frequently balance and kneel. (R. 97). Dr. Colb concluded that Plaintiff could think, communicate, care for her own needs, and perform usual daily activities. (R. 99). He noted that although Plaintiff may experience pain and discomfort, she can "move about … in a satisfactory manner." (*Id.*). The ALJ gave Dr. Colb's opinion partial weight. (R. 28).

Second, Dr. Dodenhoff provided an opinion dated June 3, 2016 based on his consultative examination of Plaintiff. He noted that Plaintiff's pain medications "let her function" to perform activities of daily living. (R. 820). He opined she can sit, stand, walk, lift, carry, and handle objects. (R. 821). In addition, Dr. Dodenhoff stated Plaintiff's hearing and speaking are intact, and she can understand, remember, and carry out instructions. (*Id.*). He found she should be able to respond appropriately to supervision, coworkers, and the pressures in a work setting. (*Id.*). The ALJ gave Dr. Dodenhoff's opinion great weight. (R. 28).

---

[3] The Court notes that this RFC states Plaintiff can crouch both occasionally and frequently. Since Plaintiff presented no argument on this matter, the Court will not address it.

4

Third, Dr. Borgonos, Plaintiff's treating physician, completed a medical source statement in December 2016. He noted that he has seen Plaintiff every three months for two years. (R. 815). He listed her diagnoses as diabetes, diabetic neuropathy, hypothyroidism, depression, and GERD. (*Id.*). He assessed a fair prognosis. (*Id.*). Plaintiff's symptoms were identified as chronic pain, specifically "moderate pain that is constant mostly involving her legs," and back pain from degenerative disease. (*Id.*). Dr. Borgonos found Plaintiff could walk three city blocks without rest or pain, could sit for more than two hours at a time, and could stand for thirty minutes at a time. (R. 816). He stated that, in an eight-hour workday, Plaintiff could sit for four hours total, and stand/walk for less than two hours total. (*Id.*). He opined she could frequently lift and carry ten pounds; could occasionally lift and carry twenty pounds; and could rarely twist, stoop, crouch, squat, or climb. (R. 817). Dr. Borgonos stated Plaintiff would be off-task fifteen-percent of a workday. (R. 818). The ALJ gave Dr. Borgonos's opinion little weight. (R. 29).

At Step Four, the ALJ relied on the testimony of the VE to conclude that Plaintiff can perform her past relevant work. (R. 29). In the alternative, the ALJ found, at Step Five, that there are jobs in significant numbers in the national economy Plaintiff can perform. (R. 30). Accordingly, the ALJ found Plaintiff is not disabled under the Social Security Act.

## **LEGAL STANDARD**

"A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), is performing an appellate function." *Zambrana v. Califano*, 651 F.2d 842 (2d Cir. 1981). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, [are] conclusive…." 42 U.S.C. § 405(g). Accordingly, the district court does not make a *de novo* determination of whether a plaintiff is disabled in reviewing a denial of disability benefits. *Id.*;

*Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the court's function is to ascertain whether the Commissioner applied the correct legal principles in reaching her conclusion, and whether the decision is supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). Therefore, absent legal error, a decision of the Commissioner cannot be set aside if it is supported by substantial evidence. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Further, if the Commissioner's decision is supported by substantial evidence, that decision will be sustained, even where there may also be substantial evidence to support the claimant's contrary position. *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Substantial evidence must be "more than a scintilla or touch of proof here and there in the record." *Williams*, 859 F.2d at 258.

## **DISCUSSION**

Plaintiff's arguments concern whether the ALJ's RFC assessment is supported by substantial evidence. Specifically, she avers that it is not, because in formulating it, the ALJ cherry-picked the evidence, erred in evaluating the opinion evidence, and failed to properly consider her obesity. The Commissioner claims that the RFC is supported by substantial evidence. The Court finds that the ALJ improperly applied the treating physician rule and remand is required. It will not reach Plaintiff's remaining claims.

The treating physician rule requires "deference to the medical views of a physician who is engaged in the primary treatment of a claimant." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015). Specifically, a treating source's opinion on the nature or severity of a claimant's impairments should be given controlling weight when it is well-supported by, and not

inconsistent with, other substantial evidence in the record. *See* 20 C.F.R. § 416.927(c)(2). To override a treating physician's opinion, the ALJ must consider several factors. *See Greek*, 802 F.3d at 375. These factors include "(1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013). After considering these factors, the ALJ is required to "comprehensively set forth [her] reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004). In so doing, the ALJ must provide "good reasons" for not assigning great weight to the opinion. *Burgess*, 537 F.3d at 129. An ALJ's failure to provide good reasons for the weight given to a treating source's opinion is grounds for remand. *Halloran*, 362 F.3d at 33. In weighing the opinion evidence, "[t]he ALJ is not permitted to substitute [her] own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion." *Greek*, 802 F.3d at 375.

The purpose of the treating physician rule is to "give more weight to medical opinions from [the] treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [any] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." *Flynn v. Comm'r of Soc. Sec. Admin.*, 729 F. App'x 119, 122 (2d Cir. 2018).

In this case, the ALJ did not provide good reasons for declining to give controlling weight to Dr. Borgonos's opinion. She stated that although Dr. Borgonos has treated Plaintiff for two years, his treatment notes "do not reflect the significant restrictions he has given in his

7

questionnaire." (R. 29). In an apparent attempt to elaborate on this, the ALJ wrote that "[h]is treatment notes indicate that the claimant's diabetes is generally under good control and that her recent diabetic foot exam was essentially normal." (*Id.*). The ALJ also stated that there is no evidence Plaintiff's condition has worsened since the alleged disability onset date. (*Id.*).

First, the statement that Dr. Borgonos's treatment notes do not reflect the functional limitations assigned in his medical source statement misunderstands the nature of medical records. Medical records do not necessarily assess functional abilities; rather, they record, diagnose, and address symptoms, and document treatment paths. And, if the medical records in this case *did* contain functional findings inconsistent with those expressed in the opinion, the ALJ should have discussed, or at the very least cited to, them. She did not. And so, the Court is left to wonder what, precisely, the ALJ reasoned in discounting Dr. Borgonos's opinion in this regard. This does not comport with the treating physician rule. *See Randall v. Berryhill*, No. 3:17-CV-1354 (MPS), 2018 WL 4204438, at *7 (D. Conn. Sept. 4, 2018) (concluding that an ALJ's failure to support his reasons for rejecting a treating source's opinion with "further analysis or relevant citations to the record prevents them from serving as 'good reasons' in support of his weight designation"); *Valentin v. Berryhill*, No. 3:17-CV-00781 (SRU), 2018 WL 4405609, at *5 (D. Conn. Sept. 17, 2018) (finding failure to provide "good reasons" for discounting a treating source opinion when the ALJ pointed only to the "totality of the medical evidence of record" and did not "cite to any specific medical authority" to support the weight assignment); *Didio v. Berryhill*, No. 3:17-CV-01536 (SRU), 2019 WL 1352807, at *7 (D. Conn. Mar. 26, 2019) (noting that ALJ should have cited to specific medical records in support of the statement that the treating physician's opinions were not supported by or consistent with other evidence in the record).

8

The ALJ also reasons that Dr. Borgonos's treatment notes indicate Plaintiff's diabetes is "generally under good control." (R. 29). To begin, the Court questions the supportability of this statement, as treatment notes from Dr. Borgonos and his colleagues from 2014 and 2015 are replete with assessments of Plaintiff's diabetes as *uncontrolled*. *See* R. 573, 589, 601, 604, 605, 616, 650, 728, 731, 732, 772, 775, 780, 782, 786. In addition, the phrase "under control" is not specific enough to be helpful in ascertaining the ALJ's reason for rejecting a treating source opinion. In *Thornton v. Colvin*, No. 3:13-CV-1558 CSH, 2016 WL 525994, at *9 (D. Conn. Feb. 9, 2016), the court discussed the term "stable" in the medical records context, finding that it means only "at that time the condition is neither worsening nor improving: it has been *stabilized*." The court reasoned, "[t]his says little if anything about the severity of the patient's symptoms, and nothing at all about whether the symptoms or effect of the condition render the patient *disabled*. The patient may be disabled; she may not be; the answer depends upon the nature and severity of the condition's symptoms, not upon whether at a given moment those symptoms are stable." *Id.* Here, likewise, the term "under control" is not especially illuminating; it does not provide any information about the effect of the condition or its severity.

Further, even if Plaintiff's diabetes was under control, this accounts only for diabetes and does not pertain to Plaintiff's peripheral neuropathy[4]. A review of Plaintiff's medical records evidence numerous occasions where Plaintiff complained of, and medical sources documented, Plaintiff's neuropathy and resulting severe pain. For example, in July 2014, Dr. Borgonos's notes indicate Plaintiff complained of worsening neuropathy of her legs, for which he prescribed

---

[4] Peripheral neuropathy is "a disease or degenerative state (as polyneuropathy) of the peripheral nerves in which motor, sensory, or vasomotor nerve fibers may be affected and which is marked by muscle weakness and atrophy, pain, and numbness." *See* https://www.merriam-webster.com/dictionary/peripheral%20neuropathy#medicalDictionary.

9

Lyrica. (R. 597). In August 2014, Plaintiff reported experiencing constant burning pain in her legs and feet bilaterally. (R. 592). Dr. Borgonos's notes from November 2015 state Plaintiff's neuropathy in her legs and feet was worse at the end of the day. (R. 775). Foot check examinations in April, May, and July 2016 showed Plaintiff had pain with palpation of the plantar fascia plantar metatarsal heads and with range of motion. (R. 782, 786, 788). In addition, even if Plaintiff's diabetes was under control, as the ALJ describes, there is no medical evidence that stabilization of that condition would mean that Plaintiff's neuropathy could not be disabling. While progression of neuropathy can be slowed with good blood sugar control,[5] there is no evidence in the record that there is a link in this case between possible control of one condition and the control of the other. Thus, the ALJ has not provided good reasons for rejecting Dr. Borgonos's opinion in this regard as well.

Finally, the ALJ does not discuss some of the factors relevant to weighing a treating source's opinion. For example, she does not consider how often Dr. Borgonos treated Plaintiff, or the extent of that treatment. Instead of considering the significant treatment relationship Dr. Borgonos had with Plaintiff, the ALJ gave great weight to the opinion of Dr. Dodenhoff, who examined Plaintiff only once. In this case, this runs afoul of the treating physician rule. "Generally, the opinion of a consultative physician, who only examined plaintiff once, should not be accorded the same weight as the opinion of plaintiff's treating [physician]." *Anderson v. Astrue*, No. 07-CV-4969, 2009 WL 2824584, at *9 (E.D.N.Y. Aug. 28, 2009). "This is because 'consultative exams are often brief, are generally performed without the benefit or review of claimant's medical history and, at best, only give a glimpse of the claimant on a single day.'" *Id.*

---

[5] *See* https://www.mayoclinic.org/diseases-conditions/diabetic-neuropathy/symptoms-causes/syc-20371580.

(quoting *Cruz v. Sullivan,* 912 F.2d 8, 13 (2d Cir.1992)). In fact, "[t]he Second Circuit has cautioned that ALJs should not rely heavily on the findings of consultative physicians after a single examination, and has advised that, ordinarily, a consulting physician's opinions or reports should be given little weight." *Didio v. Berryhill*, No. 3:17-CV-01536 (SRU), 2019 WL 1352807, at *5 (D. Conn. Mar. 26, 2019) (quotation marks omitted). The ALJ's failure to mention the frequency and extent of Dr. Borgonos's treatment relationship with Plaintiff is especially troublesome here because she rejected his opinion in favor of Dr. Dodenhoff's. *See Randall*, 2018 WL 4204438, at *6 (finding ALJ's failure to consider the frequency, nature, and extent of the treating relationship was exacerbated by his giving significant weight to a consultative physician).

Also, the ALJ's reasons for giving great weight to Dr. Dodenhoff's opinion are not clear. The ALJ initially states that Dr. Dodenhoff's opinion is "quite general and does not specifically define the frequency with which the claimant can engage in these activities on a regular basis," but then reasons that the opinion does indicate Plaintiff "is capable of significant postural functions." (R. 28). The ALJ goes on to justify giving great weight to the opinion because "Dr. Dodenhoff is an expert in internal medicine with an awareness of the evidence in the record along with an understanding of Social Security disability programs and evidentiary requirements," and because his opinion is consistent with the objective medical evidence. (*Id.*). It is puzzling that the ALJ cites the lack of specificity of Dr. Dodenhoff's opinion in terms of Plaintiff's functional abilities but credits them anyway. And, since there is no evidence in the record that Dr. Dodenhoff, as a one-time examining consultant, reviewed Plaintiff's medical history or that he had an understanding of disability programs and their evidentiary requirements, it is unclear how the ALJ came to the weight assessment. Accordingly, Dr. Dodenhoff's opinion

cannot amount to good reasons for overriding Dr. Borgonos's opinion. In this case, the ALJ's decision to credit the opinion of a consultative examiner over the opinion of a treating source "flips the presumption in favor of the opinions of treating physicians on its head." *Randall*, 2018 WL 4204438, at * 9.

In conclusion, the ALJ did not properly evaluate Dr. Borgonos's opinion under the relevant factors. And, the ALJ's failure to provide good reasons for her weight assignment to Dr. Borgonos was not harmless. The opinion prescribes limitations more severe than the RFC the ALJ ultimately assessed. Thus, the Court cannot say the outcome here would be the same had the ALJ correctly applied the treating physician rule. Remand is therefore required.

## **CONCLUSION**

For the reasons set forth above, Plaintiff's motion to remand is granted and the Commissioner's motion to affirm is denied. This case is remanded to the Social Security Administration for further proceedings consistent with this opinion. Further proceedings before the ALJ shall be completed within 160 days of the remand. If Plaintiff's claim is denied, a final decision of the Commissioner shall be rendered within 90 days of Plaintiff's appeal of the ALJ's decision.

This is not a recommended ruling. The consent of the parties allows this Magistrate Judge to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure. Appeals can be made directly to the appropriate United States Court of Appeals from this judgment. *See* 28 U.S.C. § 636(c)(3); Fed.R.Civ.P. 73(c). The Clerk's Office is instructed that, if any party appeals to this Court the decision made after this remand, any subsequent social security appeal is to be assigned to the Magistrate Judge who issued the ruling that remanded the case.

SO ORDERED, this  8th  day of May, 2019, at Bridgeport, Connecticut.

                                           */s/ William I. Garfinkel*
                                           WILLIAM I. GARFINKEL
                                           United States Magistrate Judge